IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : Case No. 1:18-cv-00666 |
| v. | : : : |
| NATIONAL GAS & ELECTRIC, LLC and EMC HITECH SOLUTIONS CORP. | : : : |
| Defendants. | : : |

# FIRST AMENDED CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. EMC Hitech Solutions Corp. ("EMC") initiated pre-recorded telemarketing calls to the residential telephone number of Plaintiff to promote National Gas & Electric, LLC ("National Gas & Electric") in violation of the TCPA. National Gas & Electric hired EMC Hitech Solutions Corp. to originate new customers and is vicariously liable for their illegal telemarketing conduct.

3. The Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers

*en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff George Moore is a resident of Illinois in this District.

6. Defendant National Gas & Electric, LLC is a Texas corporation that has its principal office in Houston, Texas and a registered agent of CT Corporation System, 208 So. Lasalle St., Suite 814, Chicago, IL 60604. Defendant National Gas & Electric themselves, and through third parties, place telemarketing calls into this District, as they did with the Plaintiff.

7. Defendant EMC Hitech Solutions Corp. is a New York Corporation with its principal place of business at 164 Main St., Binghamton, NY 13905. EMC places telemarketing calls into this District, as they did with the Plaintiff.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant is a resident of this district, and because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA Background

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." *See* 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition,

the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

Calls to Mr. Moore

15. Mr. Moore's home telephone number, (630) 510-XXXX, has been on the National Do Not Call Registry for years prior to the receipt of the calls at issue.

16. Mr. Moore has never removed his residential telephone number from the National Do Not Call Registry.

17. On January 4, 2018, Mr. Moore received a pre-recorded telemarketing call from EMC Hitech Solutions Corp. calling from Caller ID (312) 875-5101.

18. In order to confirm the identity of the calling party, the Plaintiff listened to the telemarketing pitch after the pre-recorded message and confirmed that National Gas & Electric was the party whose services were being promoted.

19. The telemarketing representative did not identify his company or mention any company other than National Gas & Electric.

20. The telemarketing representative also provided a call back number of (888) 442-0002.

21. This is a number for National Gas & Electric.

22. Unfortunately, Mr. Moore's experience is not unique:

11:55AM on 12/6/17 and left no message. When I called back, I got a "number has been disconnected" message.

4

> Received a call from 312-875-5101 at 3:30 PM on 1.5.18; shown on CID as: "Chicago IL". REALLY-- the ENTIRE city of Chicago was calling??? LOL!!! Call was picked up by answering machine, and caller hung up; so it was obviously a SCAMMER, since a legitimate caller would leave a message and a call back number.

*See* https://800notes.com/Phone.aspx/1-312-875-5101 (Last Visited January 22, 2018).

23. Mr. Moore was also sent pre-recorded calls on January 8, 11, 12, and 15, 2018.

24. The purpose of these calls was to generate sales for National Gas & Electric.

25. In fact, National Gas & Electric itself placed calls to the Plaintiff attempting to complete the sale from the pre-recorded message sent by their vendor.

26. Plaintiff and all members of the class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff' telephone line from legitimate communication.

27. Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to them.

### National Gas & Electric's Liability for the Telemarketing Calls

28. National Gas & Electric is a "person," as defined by 47 U.S.C. § 153(39).

29. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

30. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

31. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically

recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

32. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as National Gas & Electric may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

33. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

34. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

35. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed

6

> information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

36. After the pre-recorded telemarketing calls the Plaintiff received, he contacted National Gas & Electric who informed him that he was contacted by a vendor of theirs.

37. National Gas & Electric is legally responsible for ensuring that the company who made the calls complied with the TCPA, even if National Gas & Electric did not itself make the calls.

38. National Gas & Electric knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

39. In fact, National Gas & Electric accepted the business from illegal calls from the defendants, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

40. By hiring a company to make calls on its behalf, National Gas & Electric "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

41. Moreover, National Gas & Electric maintained interim control over the actions of the party that made the call.

42. For example, National Gas & Electric had absolute control over whether, and under what circumstances, it would accept a customer.

43. Furthermore, National Gas & Electric had day-to-day control over the party that made the call's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of National Gas & Electric.

44. Additionally, National Gas & Electric restricted the geographic location that the company that made the calls could promote National Gas & Electric.

45. National Gas & Electric also gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase.

46. Moreover, National Gas & Electric instructed the third party to transfer the called parties over to a third-party verification company that National Gas & Electric had hired to complete the process of signing a customer up for their service.

47. In other words, National Gas & Electric allows their vendors to bind them in contract following an illegal telemarketing call, such as the ones the Plaintiff received.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

49. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

50. The class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) through the use of a prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

51. Excluded from the class is the Defendants, and any entities in which the Defendants has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The class as defined above is identifiable through phone records and phone number databases.

53. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

54. Plaintiff is a member of the class.

55. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by calling individuals on the National Do Not Call Registry;

    b. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

9

      c.      Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

56.      Plaintiff's claims are typical of the claims of class members.

57.      Plaintiff is an adequate representative of the class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58.      The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

59.      Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

60.      The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

61.      Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Telemarketing Call Provisions

62.      Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63.     The Defendants violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's residential line using a pre-recorded message, or (b) by the fact that others made those calls on its behalf.

64.     The Defendants' violations were negligent and/or knowing.

### Relief Sought

For himself and all class members, Plaintiff request the following relief:

A.     Injunctive relief prohibiting such violations of the TCPA by the Defendants;

B.     Because of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seek for themselves and each class member treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

C.     Because of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiff seek for themselves and each class member $500 in statutory damages for every call that violated the TCPA;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the class;

E.     An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class; and

F.     Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Lauren E. Snyder (6293832)
1350 N. Wells Street, Apt. A214
Chicago, IL  60610
(419) 344-1146
lauren.elizabeth.snyder@gmail.com

Brian K. Murphy (0070654), Trial Attorney
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 *facsimile*
E-mail: murphy@mmmb.com

## CERTIFICATE OF SERVICE

I, hereby certify that on June 7, 2018, I filed the foregoing with the Court's CM/ECF system, which served the same on the counsel of record.

*/s/ Anthony Paronich*
Anthony Paronich

12